## CHARLES H. FROST *v.* VALENTINE KOON and others.

A statement as to the origin of the debt, in a confession of judgment as follows: "1852, 1st December, money lent by the plaintiff to the defendant to aid in purchasing lot in Forty-seventh street, New York, to the amount of $200. 1853, 1st August, a balance was due to the plaintiff by defendant, on the purchase of Eighth Avenue lot, to $800. 1854, 1st May, money was lent by plaintiff to defendant to aid in purchasing lots on Ninth avenue. to $800. And cash was lent by plaintiff to defendant at different times since above, to $175—$1,475, which sum of $1,475 is now due by the defendant to the plaintiff, the interest on said sums having been paid till the date hereof." *Held*, to be sufficiently minute; unless it was in regard to the last item, which related to cash lent; and that as to that, it could also be supported within the spirit of the decisions. But if not, that the insufficiency of that item could not have the effect of destroying the whole judgment.

Where a prior incumbrancer by judgment, on being made a party to a foreclosure suit, under an allegation in the complaint, charging him as having an interest in the premises subsequent to the mortgage, makes no defense to the foreclosure, but allows judgment to be taken against him by default, and the surplus moneys to be distributed to other claimants, this is not equivalent to an admission by him upon the record, that he has no lien upon the premises older than, or superior to that of the mortgage, so as to be an absolute *estoppel* upon him (or a purchaser under his judgment), in another action brought by a different plaintiff for the foreclosure of a distinct and prior mortgage, and prevent him from asserting in the latter suit a legal priority to the surplus moneys to which he is apparently entitled by virtue of his judgment; the parties to the record not being the same, nor the subject of controversy identical.

Nor will such incumbrancer (or his assignee), be estopped from claiming the surplus moneys in the second foreclosure suit, by his standing by at the sale in that suit, and suffering the property to be sold to another person, under a public announcement by the sheriff, that there are no other liens upon the premises than those stated (among which that of the judgment under which such incumbrancer claims is not included); where the purchaser is fully apprised of such incumbrancer's rights, and that they will be insisted on.

Where a judgment creditor of a mortgagor releases from the operation of his judgment, certain premises which are bound thereby, this should not prejudice him (or his assignee), in a contest respecting the surplus moneys arising from a sale of mortgaged premises in a foreclosure suit, beyond the proportionate part of the judgment which the released premises, in connection with the mortgagor's other real estate, ought to pay.

Where a purchaser claims surplus moneys in a foreclosure suit, on the ground

that a prior judgment upon which the mortgaged premises were sold, was not a valid lien upon the lands, and it appears that he did not interfere to prevent the sale by injunction, or the consummation of the title by deed, or the delivery of possession thereunder to the purchaser at the sale under the judgment, he will be held to have been guilty of so much *laches* in the assertion of his rights, that he ought not to be permitted to enforce them against such surplus moneys.

THIS is an appeal, by the executors of Thomas Southard, originally one of the defendants, from an order of the supreme court, in the first district, disposing of certain surplus moneys in this action arising upon the foreclosure of a mortgage and a sale of the mortgaged premises, and awarding said surplus moneys to the defendant Koon, as between him and Thomas Southard, who were rival claimants thereof.

The facts of the case are as follows: The surplus in controversy arose upon a foreclosure of a mortgage given by Robert Gilmore to one Andrew Quackenbush, on the 20th May, 1854, for $1,250, upon a lot on the Eighth avenue, in the city of New York, and subsequently assigned to Frost, and foreclosed by him in this action. The property was sold under the judgment of foreclosure, on the 6th of May, 1859, and was purchased by Valentine Koon, the present respondent, for $5,925. After paying prior liens and the costs of foreclosure, there remained a surplus of $2,191.86, which is claimed by Koon and Thomas Southard. In the supreme court it was awarded to Koon, and Southard having died pending the proceedings, his executors appealed to this court.

Both parties claim through Gilmore, who was the owner of the premises in 1854 and subsequently thereto. The claim of Koon to the surplus rests upon the following facts: Gilmore, being the owner of the lot on Eighth avenue and other property, and indebted to one John Van Wagner, confessed to him a judgment for $1,475, which was filed and docketed in New York on the 29th day of December, 1854. An execution on the judgment was issued to the sheriff of New York on the 30th of March, 1857, and under

it the lot on the Eighth avenue was advertised and sold on the 18th of June, 1857; and on that sale Koon became the purchaser for $1,700. He received the usual certificate of sale, and at the expiration of fifteen months, and on the 14th of September, 1858, the sheriff conveyed to him the property, and he went into possession. This lot was at the time of sale encumbered by a prior mortgage of $2,000, dated 13th of May, 1854, to Garret Myer; and the one of $1,250, before mentioned, to Quackenbush, assigned to the plaintiff, upon which was the foreclosure on which the surplus in controversy arises. Koon, therefore, claimed under the lien of a judgment docketed on the 29th day of December, 1854.

The claim of Southard rests upon the following facts: On the 4th of May, 1855, Gilmore gave to one George W. Platt, a mortgage upon the Eighth avenue lot to secure the payment of $700, and on the 29th day of May, 1855, he gave to Southard a mortgage upon the same premises for $1,200. In March, 1856, Platt commenced a suit for the foreclosure of his mortgage, in which suit Southard and John Van Wagner were made defendants; and the complaint alleged that they had an interest in the premises, which had accrued subsequent to the lien of the Platt mortgage. In this suit Southard and Van Wagner made no defence, and Van Wagner consented that the usual order of foreclosure and sale should be entered, and the usual judgment of foreclosure was entered, and the premises sold under it, subject to the aforesaid mortgages to Myer and Quackenbush, to Southard on the 21st of October, 1856, and a conveyance made by the sheriff of the premises to him on or before the 3d day of December, 1856. At this sale Van Wagner was present and bid, but gave no notice of any claim or incumbrance owned by him. The sheriff sold the property under the announcement that it was subject to the Myer and Quackenbush mortgages only. Southard paid the ten per cent required in cash, at the time of the sale, in ignorance of the Van Wagner judgment, but

was apprised of that judgment and of the claim under it, before he paid the residue of the purchase money and completed his purchase, and took his deed. He went into possession in the spring of 1857. On this sale a surplus of $1,054 arose, which was applied on the bond and mortgage which Gilmore had given to Southard on the same premises on the 29th of May, 1855, to secure $1,200. Southard, therefore, claimed under a lien (that of Platt's mortgage), dating back to May 4, 1855, some four months subsequent to the date of the Van Wagner judgment under which Koon claimed.

As against the right of Koon, it is alleged by the executors of Southard, that the judgment in favor of Van Wagner, under which he purchased the equity of redemption, was void for a defective statement in the confession of the judgment which renders all proceedings under it invalid. This judgment was entered on the 29th of December, 1854 (and, if available from date, is prior to any right or lien of Southard), and was founded upon the following statement as to the origin of the debt: "1852, 1st December, money lent by the plaintiff to the defendant, to aid in purchasing lot in Forty-seventh street, New York, to the amount of $200; 1853, 1st August, a balance was due to the plaintiff by the defendant on the purchase of Eighth avenue lot to $800; 1854, 1st May, money was lent by the plaintiff to the defendant to aid in purchasing lots on Ninth avenue to $300; and cash was lent by the plaintiff to the defendant at different times since above to $175—$1,475, which sum of $1,475 is now due by the defendant to the plaintiff—the interest on said sums having been paid till the date hereof."

When the above judgment was entered up, Gilmore was the owner of three lots on the Ninth avenue, subject to various prior incumbrances, upon which Van Wagner's judgment was a lien, as well as upon the Eighth avenue lot, such prior incumbrances being five several mortgages, amounting, in the aggregate, to $7,000. On the Ninth

avenue lots Platt also had a mortgage for $1,500, dated on the 13th and on the 14th of July, 1855, and in March, 1856, Platt commenced to foreclose it. Neither Southard nor Van Wagner were made parties to this foreclosure. A judgment was subsequently rendered and the Ninth avenue lots sold on the 21st of October, 1856, to Platt for $4,400, and on that sale there was a surplus of $2,267.53, which was paid into court. A reference was had as to this surplus, and Van Wagner, although not a party to the suit, set up a claim to the surplus, under his judgment, but his claim was rejected on the ground that the judgment being prior to the mortgage foreclosed, was not affected by the foreclosure, and was not a lien on the surplus.

On the 3d day of March, 1857, Van Wagner gave to Platt a general release of the Ninth avenue lots which was recorded on the 6th of May, 1857. At this time Van Wagner was aware that the Eighth avenue property was subject to the before-mentioned mortgages to Myer of $2,000; to Quackenbush for $1,250; and to another mortgage to Southard, of the 29th May, 1855, for $1,200; for they are all recited in a mortgage executed by Gilmore to himself on the same (Eighth avenue) premises, for $2,500, dated on the 7th of June, 1855. On this property there was a surplus of $1,054.32, on the sale under Platt's mortgage, which was made subject to the mortgages of Myer and Quackenbush—a sum insufficient to pay the entire amount of the Southard mortgage. The sale of the Ninth avenue property (which was had at the same time as that of the Eighth avenue) under Platt's mortgage, was also made in the presence of Van Wagner. Platt became the purchaser at the price of $4,400, subject to the five mortgages for $7,000 above mentioned, yielding a surplus of $2,267.53, being more than sufficient to pay the Van Wagner judgment. Southard also claims that there is evidence tending to show that the Van Wagner judgment was paid and satisfied, but as the referee has reported against him on the

question of fact on that point, it is not deemed necessary to recapitulate the facts bearing on that part of the case. Upon these facts it was claimed, on the part of Southard, that he having become the purchaser of the Eighth avenue lot in 1856, perfected by deed on the 5th of May, 1857, under the Platt foreclosure, was so situated that he had the equitable right to compel the payment of the Van Wagner judgment out of the Ninth avenue property, and that this objection was properly urged on the reference as to the surplus as against the right of Koon, although no exception was taken at the time to the proceedings of Van Wagner for the sale of the Eighth avenue lot on the judgment under which Koon purchased for $1,700, on the 13th of June, 1857, and for which he received a deed on the 14th of September, 1858. Southard also claimed that Van Wagner (and Koon as claiming through him), having been a party to Platt's foreclosure of his Eighth avenue mortgage, was estopped to claim these surplus moneys, by not having controverted the allegation in Platt's complaint that Van Wagner's incumbrance was subordinate to Platt's, and by having attended the sale under that foreclosure, and not having given notice of his claim when the sheriff announced there were no other incumbrances than those of Myer and Quackenbush, was estopped from claiming under his judgment at all. Southard further claimed that the Van Wagner judgment was satisfied and paid.

The foregoing are the leading facts upon which the question arises. Others, material to notice, are referred to in the opinions.

The referee, in the first instance, made a report in which he decided that Koon was not entitled to the surplus, for the reason that the Van Wagner judgment was void for a defective statement on confession. Upon this report an order was made, at special term, awarding the surplus to the executors of Southard. Koon appealed, and the general term reversed the order, and set aside the report, and referred the matter back to the referee, holding also that

28

the referee erred in supposing he had a right to inquire into the validity of the Van Wagner judgment in this collateral way; further holding that neither of the parties were *bona fide* purchasers, and that even if a part of the judgment was discharged by the release of the Ninth avenue property, the whole was not.

The referee made a second report, awarding Koon the money. He held that the evidence showed that Koon knew before his purchase, either by information from Van Wagner, or otherwise, of Southard's $1,200 mortgage—of his purchase of the Eighth avenue premises—of his possession under such purchase, and of his denial of the validity of the Van Wagner judgment; but that Koon and Southard each had knowledge of the facts constituting the title of the other; and that neither, though a purchaser for value paid at the time of the purchase, was in the sense of the law a *bona fide* purchaser without notice, nor entitled to the peculiar rights incident to persons in that situation. He further held that the Van Wagner judgment was not paid; that Van Wagner was not estopped by the foreclosure of Platt's mortgage from claiming under his judgment, inasmuch as he was a prior incumbrancer, and not, as charged in Platt's complaint, a subsequent incumbrancer; and inasmuch, also, as there was not any specific reference to his judgment in the pleadings or judgment entered upon the foreclosure; nor was he cut off by his release of the Ninth avenue property, farther than as to the proportional part of that judgment which the Ninth avenue property should have borne.

To this report the executors of Southard excepted. The case was heard at special term, and the report confirmed, and the order there made affirmed at the general term; the court holding that whatever might have been the equitable rule in regard to the effect of Van Wagner's release of the Ninth avenue premises, Southard had slept upon his rights, had permitted without objection, a sale of the Eighth avenue premises upon the Van Wagner execution, and

suffered, without interference on his part, the purchaser at the sheriff's sale to obtain his deed, and afterwards possession under it, to his own exclusion from the property; that after suffering himself to be thus dispossessed, he could not maintain an action of ejectment to recover possession, nor obtain relief. by motion, nor in a court of equity, as that court would on the facts found by the referee, consider him concluded by his own silence and neglect, from any relief. That his rights could not be regarded as superior on a claim to the surplus moneys to those which would have been presented in an action at law or in equity, and he must be treated as confessing the superior rights of Koon claiming under another and an adverse title. From the order of affirmance, Southard's executors appealed to this court.

*Thomas Nelson*, for Southard's executors (appellants).

*John H. Reynolds*, for Koon (respondent).

HOGEBOOM, J.   The controversy in this case is in regard to the surplus moneys arising upon the foreclosure of a mortgage, and the conflicting claimants are Valentine Koon and Thomas Southard.  The mortgage foreclosed is one for $1,250, executed by Robert Gilmore to Andrew Quackenbush, and subsequently assigned to the plaintiff Frost, upon premises situated on the Eighth avenue, in the city of New York.  This mortgage was executed on the 20th day of May, 1854, and the premises were sold under it on the 6th day of May, 1859, and Koon became the purchaser.

Koon claimed the surplus moneys as having title to the premises at and previous to the time of the mortgage sale, under a sheriff's deed executed to him on the 14th day of September, 1858, as the purchaser at a sheriff's sale, made to him on the 13th day of June, 1857, upon a judgment by confession, given on the 29th day of December, 1854, by Robert Gilmore, the then owner of the premises, to

John Van Wagner.   The lien, therefore, under which Koon claims title to the surplus moneys dates back to the 29th day of December, 1854.

Southard claimed the surplus moneys as a mortgagee of the same premises under a mortgage from Robert Gilmore to him, executed on the 29th day of May, 1855; also, as a purchaser of the same premises on the 21st day of October, 1856, upon a mortgage foreclosure thereof, under a mortgage executed by Gilmore to George W. Platt on the 4th day of May, 1855.   On this sale certain surplus moneys arose, a portion of which was paid to Southard as a subsequent mortgagee, but not enough to extinguish his claim as such.   The lien, therefore, under which Southard and his executors claim title to the surplus moneys dates back to the 4th day of May, 1855—the date of the Platt mortgage.

This, it will be seen, is some four months subsequent to the lien of the Van Wagner judgment under which Koon claims; and, if there were no other circumstances in the case, would show a manifest priority of title on the part of Koon to the fund in controversy.   This apparent priority is attempted to be overthrown by Southard in several ways.

1. It is contended that the Van Wagner judgment is invalid as against subsequent encumbrances on the property, by reason of a radically defective statement in the confession of judgment.

2. It is contended that Van Wagner and Koon are estopped from setting up any title to the surplus moneys by having been made parties to the foreclosure of the Platt mortgage under an allegation in the complaint which charged them as having or claiming an interest in the premises subsequent to that of the mortgage, making no defence to such foreclosure, and allowing judgment to be taken against them by default, and the surplus moneys to be distributed to other claimants; which is claimed to be equivalent to an admission by them upon the record that they had no lien upon said premises older or superior to that of the Platt mortgage.

3. It is contended that Koon's assignor, Van Wagner, (and consequently Koon), is further estopped from making such claim by Van Wagner's standing by at the sale under the Platt mortgage, and suffering the property to be sold at public auction and Southard to become the purchaser under a public announcement by the sheriff that there were no other liens upon the premises than those there stated (among which that of the Van Wagner judgment was not included.)

4. It is contended that Van Wagner—and if he, then Koon also—is precluded from making any claim to the surplus moneys, by reason of releasing from the operation of his judgment certain other premises situated on the Ninth avenue, which were bound thereby; also belonging to Gilmore, and sold under certain mortgages thereon, the surplus moneys upon which were properly applicable to the payment of this judgment; and, if applied thereto, would have left this fund arising from the sale of the Eighth avenue premises wholly applicable to Southard's claim.

5. It is contended that the Van Wagner judgment was paid and satisfied, and therefore not entitled to participate in the distribution of the surplus moneys. This last proposition it is unnecessary to discuss, as the referee who heard this cause has decided the question of fact arising thereon against Southard, upon sufficient evidence to justify his conclusion.

1. The Van Wagner judgment was not void. In conformity with repeated decisions of this court, it must be held that the specifications in the statement on which the judgment was founded were sufficiently minute, unless it be that relating to cash lent, and in regard to that, the statement is in substance that Gilmore was indebted to Van Wagner for cash lent at different times between the 1st of May, 1854, and the 29th of December, 1854, to the amount, in the aggregate, of $175. I am inclined to think this also can be supported within the spirit of the decisions

above referred to. If not, it can not have the effect of destroying the whole judgment; at most it can be invalidated only to the extent of $175.

2. It is possible that as against the mortgage of Platt on the Eighth avenue property, and in the suit for the foreclosure of that mortgage, and as to the surplus moneys thence arising, Van Wagner (and Koon as his assignee) would be *estopped* by the proceedings in that suit from asserting any title to the surplus moneys, as against Platt or Southard. But I do not think this fact, however admissible in evidence, would be an absolute estoppel as between Koon and Southard in another action, by Frost, for the foreclosure of a distinct and prior mortgage to Quackenbush, preventing him from asserting a legal priority to the surplus moneys to which he was apparently entitled. The parties to the record were not the same, nor the subject of controversy identical. As an estoppel by record, therefore, it fails; and as an estoppel *in pais* it is not conclusive, because there was no act done or omitted by Van Wagner which was intended to operate upon or did operate upon Southard; nor was Southard thereby induced to make any purchase or forego any rights which he would otherwise have insisted on; nor would the latter be legally prejudiced by having the truth now enforced.

3. The same remarks apply to the estoppel supposed to arise from Van Wagner's silence at the sale of the Eighth avenue property under Platt's mortgage. Southard lost no rights upon that occasion by the silence of Van Wagner, which he would now be prevented from enforcing, if Van Wagner's judgment were permitted to be collected; and besides, Southard was fully apprised of Van Wagner's legal rights, and that they would be insisted on, before he completed his purchase.

I am, therefore, of opinion that Koon is not estopped by any proceedings or conduct of his assignor, Van Wagner, from asserting his claim to these surplus moneys.

4. The only serious question arises upon the legal effect of the release by Van Wagner of the Ninth avenue premises from the operation of his judgment. There is some reason for saying, with the referee, that if improperly released, it should not prejudice Koon beyond the proportional part of the judgment which those premises, in connection with Gilmore's other real estate ought to pay. But independent of that consideration, I am disposed to concur in the view taken of the case by the supreme court, to wit: that Southard has been guilty of so much *laches* in the assertion of his rights that he ought not to be permitted to enforce them against these surplus moneys. If he is entitled to these surplus moneys, it is upon the ground that the Van Wagner judgment is not a valid lien against the lands. If this were so, then those lands would not have been liable to be sold upon the execution issued on the Van Wagner judgment, and Southard, as a party interested in those lands, should have prevented such sale by injunction. But he neither interfered to prevent such sale, nor the consummation of the title by deed, nor the delivery of possession thereunder to the purchaser. It is well suggested in the court below that after such practical submission to the claim of Koon, Southard would not have been in a situation to maintain an action of ejectment, nor to seek equitable relief against him. Koon has been permitted, by the tacit acquiescence of Southard to pay his purchase money for the premises, and to consummate his title without objection or protest; and it is now too late to reinstate Koon in his original condition, and would be, I think, giving practical encouragement to excessive negligence and indirect injustice and fraud, to interfere in this stage of the proceedings to correct an imputed error or mistake growing out of a probable misapprehension of a rule of law.

I am in favor of *affirming* the order of the supreme court, with the costs of appeal.

DAVIES, J. (After stating the facts.) Five objections are mainly urged by the counsel for the appellants, to the right of Koon to the surplus moneys in this case.

1. That the judgment confessed by Gilmore to Van Wagner is void, on the ground that the statement upon which it is entered, was not in conformity with the code.

2. That previous to the sale in June, 1857, by the sheriff, on the execution issued upon the judgment in favor of Van Wagner, that judgment had been paid and satisfied.

3. That the lien of the judgment had been extinguished by the judgment of foreclosure and sale in the action commenced by Platt, to foreclose his $700 mortgage upon the Eighth avenue property, to which action Van Wagner had been made a party defendant.

4. That it was the duty of Van Wagner to have collected the amount of his judgment out of the Ninth avenue property; and that having released the same, he is now precluded from a resort to the Eighth avenue property for that purpose.

5. That Van Wagner, and those claiming under him, are estopped from enforcing this judgment against the Eighth avenue property, on the ground that at the time of the sale under the Platt mortgage and the purchase of the premises by Southard, it was announced that there were no other liens upon the premises than the two mortgages to Myer and Quackenbush, and that Van Wagner did not then assert the lien and validity of his judgment, as he was bound to do. These objections will be considered in the order stated.

1. The defectiveness of the statement contained in the judgment. It authorizes a judgment to be entered for the sum of $1,475, for a debt justly due to the plaintiff arising upon the following facts:

" Dec. 1st, 1852. Money was lent by the plaintiff to the defendant to aid in purchasing a lot in Forty-seventh street, to the amount of_____ $200 00
" Aug. 1st, 1853. A balance was due to plaintiff by defendant on the purchase of Eighth avenue lot to _____ 800 00

" May 1st, 1854.   Money was lent by the plaintiff
to defendant to aid in purchasing lots on Ninth
avenue to ............................................... $300 00
" May 1st, 1854.   And cash was lent by the
plaintiff to the defendant at different times
since above to ....................................... 175 00

$1,475 00

Which sum of one thousand four hundred and seventy-five
dollars is now due by the defendant to the plaintiff, the
interest on said sum having been paid till the date hereof.
      "Dated NEW YORK, 29*th December*, 1854.
            " (Signed.)          ROBERT GILMORE."

And which statement is duly verified by his oath.
 mc
      If this statement does not conform to the requirements
of section 383 of the code, it is difficult to perceive how
one can be drawn which would.   The code requires the
statement to be verified, and to contain 1st. The amount
for which the judgment may be entered, and an authority
to enter judgment therefor.

      2. If it be for money due, it must state concisely the
facts out of which it arose, and must show that the sum
confessed therefor, is justly due.   It is incontrovertible
that all the matters required by the first subdivision of
this section are contained in this statement.   It states the
amount for which the judgment may be entered, and
authorizes its entry.   The judgment being for money
due, it also states concisely the facts out of which it, that
is the indebtedness of the defendant to the plaintiff, arose.
And the statement must show that the sum for which the
judgment is confessed, is justly due.   These facts are here
given in great detail, and assuming, as we must, that they
are truly stated, they show conclusively that the defend-
ant, on the day he authorized the entry of this judgment,
was justly indebted to the plaintiff in the sum named
therein.   The dates of the separate indebtedness, and the
cause thereof are specifically stated, and could not well have

been more accurately given. This remark does not of course, apply to the last item of $175, of cash lent to the defendant by the plaintiff from the 1st of May, 1854, to December 29th of that year. In *Lanning* v. *Carpenter* (20 N. Y. 447), and in *Freligh* v. *Brink* (22 id. 418), we held the statements sufficient which declared that the debt was for money borrowed by the debtor of the creditor, without any specification of time or separate amounts. We have frequently affirmed the doctrine of those cases, and we see no reason to depart from the rules there laid down. The statement in the judgment must therefore be deemed a compliance with the provisions of the code, and as not subject to impeachment for the cause suggested. And the difficulty presents itself, which is fatal to the attempt of Southard to impeach the validity of this judgment. It was a good judgment as between the parties, and before any attempt was made by any party who had a right to challenge it, Koon became a purchaser at a sale under an execution issued upon it, and paid the purchase money, and took his deed for the premises. The judgment cannot now be impeached collaterally. (*Miller* v. *Earle*, 24 N. Y. 110; *Neusbaum* v. *Keim*, id. 325.)

2. It is urged that the sale on the 13th of June, 1857, to Koon, by virtue of the execution upon the Van Wagner judgment, passed no title to him of the premises sold, for the reason that the judgment had been previously paid and satisfied. It is a sufficient answer to this objection to observe that the referee has found, as matter of fact, that the judgment held by Van Wagner was not in fact paid, or in any way actually satisfied. As this finding is conclusive upon this court, it is unnecessary to examine the testimony adduced before the referee, to ascertain whether it sustains such a finding. We assume it to be so, and that disposes of this objection.

3. It is urged that the lien of Van Wagner's judgment was extinguished by the judgment of foreclosure and sale, in the action instituted by Platt to foreclose his $700 mort-

gage on the Eighth avenue property, Van Wagner being a
party defendant in that action.   That mortgage bore date
May 4, 1855, and the premises were then subject to the
previous mortgages to Myer and Quackenbush, and to the
general lien of Van Wagner's judgment, and to the mort-
gage to Southard of May 29th, 1855, and to the mortgage
to Van Wagner of June 7th, 1855.   The two latter mort-
gages being subsequent liens to Platt's mortgage, and the
two other mortgages and Van Wagner's judgment being
prior liens, Southard and Van Wagner were made par-
ties defendant upon the allegation in the complaint that
they had, or claimed, some interest in the premises, which
interest or lien, it was charged, if any, had accrued subse-
quently to the lien of the mortgage to Platt, the plaintiff.
It was such subsequent lien only that it was sought to fore-
close and cut off and affect by the foreclosure and sale.
The complaint did not seek to disturb or affect in any way
the liens on the premises prior to that created by the
plaintiff's mortgage.   The object sought was to obtain
payment and satisfaction of that mortgage, by a sale of
the mortgaged premises, and to effectuate that intention it
was necessary to make a good title to the premises, to the
purchaser at such sale.   This could only be done by making
the holders of subsequent liens parties to such foreclosure,
and thus terminating and putting an end to their respec-
tive liens.   In this manner the lien of Southard, which he
had by virtue of his mortgage, was extinguished, and that
of Van Wagner, created by the mortgage to him, was also
extinguished, as were also the liens of all subsequent pur-
chasers or incumbrancers.   The surplus moneys arising upon
the sale were all absorbed by Southard in the payment of
his mortgage, the next lien upon the premises after that in
favor of Platt, the plaintiff in the action.   Van Wagner's
mortgage was thus removed from, and ceased to be a lien
upon, said premises, by reason of this foreclosure, and with-
out the payment of any thing to him on account thereof.
This disposes of an argument urged before the referee,

that the lien of the judgment had been extinguished because the amount of it had been included in the mortgage. If the mortgage had been paid or satisfied by the act of the mortgagee, there would have been force in this suggestion, but as it was extinguished by means of this foreclosure and sale, without the pretence of payment of any part thereof, the judgment remained wholly unaffected, by reason of the taking of the mortgage. Van Wagner was only made a party to the foreclosure under which Southard's purchase was made, as having an interest subsequent, and which subsequent lien he only had by virtue of *his* mortgage subsequent to the mortgage, and the decree or judgment in that action did not affect his right to enforce his judgment, which was a prior lien to the foreclosed mortgages. (*Lewis* v. *Smith*, 11 Barb. 156; Id. 5 Seld. 502; *Bank of Orleans* v. *Flagg*, 3 Barb. Ch. R. 318; Story Eq. Pl. § 259; *Elliott* v. *Pell*, 1 Paige, 263; *Holcomb* v. *Holcomb*, 2 Barb. 20.)

*Lewis* v. *Smith* was an action of ejectment to recover dower. The defendants set up in bar to the action a decree in a foreclosure suit, and a sale pursuant thereto—the defendants claiming and holding title from the purchaser at that sale. The mortgage was executed by the husband of Mrs. Lewis, she not joining therein, and she was made a party defendant, and was duly served with process to appear and answer, and also with a notice that no personal claim was made against her. It was alleged in the bill that the defendants therein named had, or claimed to have, "some interest in the mortgaged premises as subsequent purchasers or incumbrancers, or otherwise," and the prayer was that all the defendants might be foreclosed of all equity of redemption and claim of, in, and to the said premises. The judge, at the circuit, held the foreclosure suit was conclusive against the plaintiff, and that the defendant was entitled to judgment. The supreme court reversed the judgment—holding that she was not called upon by the allegations of the complaint to answer as to her claim of

dower in the mortgaged premises; that such right was supe-
rior, and prior to the lien created by the mortgage; and
that the allegations of the complaint pointed only to liens
or claims subsequent to that created by the plaintiff's mort-
gage; that she was justified in the belief that these inte-
rests of hers were not designed by the complainants to be
brought into litigation in that suit. *Lewis* v. *Smith* was
brought to this court, and the judgment of the supreme
court affirmed. (5 Selden, 502.) In *Corning* v. *Smith* (2
Seld. 82), it was held by this court that where one claims ad-
versely to the title of the mortgaged property, and prior to
the mortgage, he cannot be made a party defendant in a bill
to foreclose a mortgage for the purpose of trying the valid-
ity of such adverse claim, and the decree made disposing
of such claim will be held erroneous, and will be reversed,
though made after a hearing upon pleadings and proofs.

In the case of *The Bank of Orleans* v. *Flagg* (3 Barb.
Ch. Rep. 318), the Chancellor said: "The bill in this case
was not properly framed. To enable the plaintiff to liti-
gate that question (that was priority over a lien or claim
superior to that of the mortgage), instead of alleging
falsely, that he had or claimed an interest in the premises
which had accrued subsequent to this mortgage, the bill
should have stated that he claimed an interest under a
contract, or a pretended contract to purchase prior to the
mortgage."

In the present case, Van Wagner was the owner and
holder of two liens upon the mortgaged premises, one prior
to the mortgage sought to be foreclosed, and the other sub-
sequent. He was made a party defendant under the alle-
gation that he claimed an interest in the mortgaged premises,
arising subsequently to that created by the mortgage. He
had only to answer. that allegation, and by confessing the
complaint, he was only concluded, as to such subsequent
lien. The complaint property took no notice of the prior
lien, and it was therefore unaffected by any allegation in
it, or by anything done in the action. It is a well settled

rule in equity pleading, that no facts are in issue, unless charged in the bill; nor can relief be granted for matters not chargeable, for the court pronounces its decree, *secundum allegata et probata.* (Story's Eq. Pl. § 269.)

In *Elliott* v. *Pell* (1 Paige, 263), the chancellor said: " The decree made upon the bill and answer must be taken with reference to the matters then in litigation before the court, and cannot be construed to affect the rights of any of the parties to the lands which were not the subject matter of litigation in that suit." In *Eagle Fire Company* v. *Lent* ( 6 Paige, 635 ), the chancellor declares the rule emphatically to be, that, so far as mere legal rights are concerned, upon a bill of foreclosure, the only proper parties to the suit are the mortgagor and mortgagee, and those who have acquired rights or interests under them subsequent to the mortgage. And the mortgagee has no right to make one who claims adversely to the title of the mortgagor, and prior to the mortgage, a party defendant for the purpose of trying the validity of his adverse claim of title in this case. And he says, the case is analogous in principle to making one who claims adversely to the vendor a party to a bill filed by the vendee for the specific performance of the contract of sale. In which case it has been held that such adverse claimant cannot be made a party for the purpose of having the validity of his claim settled by a decree of this court, which shall thereafter be binding upon him, in relation to his claim of title. (*Lange* v. *Jones*, 5 Leigh's R. 192.) The precise question now presented was adjudicated in *Holcomb* v. *Holcomb*, (2 Barb. S. C. 20.) Perry, the holder of a mortgage prior to that sought to be foreclosed, was made a party defendant to an ordinary bill to foreclose a mortgage. The complaint contained the usual allegations, that he (Perry) was made a party defendant, as a subsequent purchaser or incumbrancer; and it was sought to divest him, by the decree in the cause, of a title which he claimed to hold adversely to the parties to the mortgage, and which he acquired under a lien

prior to the conveyance by the plaintiff to the mortgagee. The court say: "It is a general rule that, besides the parties to the mortgage, those only are proper parties to a suit for its foreclosure who have, subsequent to the mortgage, acquired rights or interests under the mortgagor or mortgagee. The plaintiff *may* also make prior incumbrancers parties to the bill, for the purpose of having the amount of such incumbrances liquidated and paid out of the proceeds of the sale; or he may, at his option, have the premises sold subject to such prior incumbrances. The object of the bill is to vest in the purchaser, under the sale made by virtue of the decree of foreclosure, the same title which the mortgagor had at the time of the execution of the mortgage. * * * . In this case, if, instead of making Perry a defendant, under the general allegation that he claimed an interest in the premises ' as subsequent purchaser, incumbrancer or otherwise,' the facts upon which the plaintiff relies to defeat the title of the defendant Perry had been alleged in the bill, he might have demurred to the bill upon the ground that the plaintiff had no right to bring him into court upon this bill of foreclosure, to try the validity of his title to the mortgaged premises."

In the case at bar, the plaintiff in Platt's foreclosure suit did not make Van Wagner a party as a prior incumbrancer, admitting the validity of the prior lien, and seeking only to have ascertained its amount, to the end that it might be paid and discharged out of the proceeds of the sale of the mortgaged premises, but he only sought to have foreclosed liens subsequent to that created by his mortgage. Under a decree made where the complaint contained allegations similar to those in the present case, prior liens or incumbrances are wholly unaffected, and it presents no bar or impediment to a party to such decree, from enforcing such prior lien or incumbrance. Such is the view taken by the legislature, when declaring the effect of a foreclosure in chancery, when it is declared that the deed to be executed by the master, "shall vest in the pur-

chaser the same estate (*and no other or greater*) that would have vested in the mortgagee if the equity of redemption had been foreclosed, and such deeds shall be as valid as if the same were executed by the mortgagor and mortgagee, and shall be an *entire bar* against each of them, and against *all parties to the suit,* in which such sale was made, and against their heirs respectively, and all claiming under such heirs." (2 R. S. 192, § 158.) This court said, in *Lewis* v. *Smith* (*supra*), in reference to this section of the revised statutes, that, taking all the expressions together, it is obvious that the " entire bar," which is spoken of, refers to rights and interests in the equity of redemption, and does not embrace interests which are paramount to the title of both mortgagor and mortgagee. Such interest would be other and greater than would have vested in the mortgagee, if the equity of redemption had been foreclosed.

There is nothing in conflict with this doctrine in the case of *Drury* v. *Clark* (16 How. Pr. Rep. 424); and that case is in harmony with it. In alluding to the points contended for by the defendant in that case, Judge Emott observes that if they are maintained, the plaintiff will be compelled to state a variety of issues to different defendants; issues in which he has no interest, and to await their determination among the defendants, whom he is bound to make parties. This should not be permitted, if possible, and is not, I think, required. The complaint before us states that these various defendants nave or claim each some interest in or lien upon the mortgaged premises; but, in every case, such lien or interest is subsequent and subject to the plaintiff's mortgage. He states sufficiently all that is necessary for the plaintiff's purpose. The fact that these defendants have or claim some interest in the lands mortgaged, makes them proper parties to the foreclosure; and the fact that these interests are subsequent to the plaintiff's lien, renders it unimportant to him, or to the purposes of his suit, so long as that is confined to the foreclosure and sale under his mortgage, what the particular rights of these

defendants are.   They are only interested in the eventual surplus, if any, and their respective interests are material only among themselves, and not to him.   All that the plaintiff asks, is a foreclosure of his mortgage against their estates or interests; and it is sufficient for that purpose, and to justify making them parties, that they have or claim some interest, or estates in the premises; but these, whatever they are, are subject to his mortgage.   Any detail of their titles, or the extent and relative priority of their interests, would be superfluous if the suit is confined to the first mortgage, and the judgment proceeds no further.

It must be deemed, therefore, to be well settled, upon principle and authority, that the decree or judgment in the Platt foreclosure suit, in no sense, affected or impaired the validity of Van Wagner's judgment, or the lien created by it, and presented no obstacle to the subsequent sale of the premises covered by that mortgage, under the execution issued upon that judgment.

It is also insisted that it was the duty of Van Wagner to collect the amount of his judgment out of the Ninth avenue property; and that having released that property from the lien of his judgment, he was precluded from resorting to the Eighth avenue property for that purpose. The general rule undoubtedly is, that when a party holds a lien upon several parcels of property, and seeks to enforce it, equity will compel him to resort to the property, in the inverse order of its alienation, when the same may have been in the meantime alienated.   And if the holder of such lien has notice of the rights or equities of others, or releases from the operation of his lien, property primarily liable for it and adequate for its discharge, he cannot thereafter resort to that portion of the property subject to his lien, secondarily liable for its payment.   In the case now under consideration, Platt had purchased property worth $4,400 beyond the five prior mortgages or incumbrances, except the judgment; and Southard had bought property worth $2,150 beyond the two prior mortgages or incumbrances

29

thereon, except the judgment; and they both bought at the same time and place. Before Southard obtained his deed, Van Wagner released to Platt, who had become the purchaser of the Ninth avenue property on a sale upon a foreclosure of his mortgage thereon, all his right and interest in said property. The effect of such release was to discharge the Ninth avenue property from the effect and lien of Van Wagner's judgment, and leaving it to rest solely on the Eighth avenue property. Southard, as the mortgagee of that property, by virtue of his mortgage, dated the 29th of May, 1855, had a superior equity to Platt, under his mortgage dated the 13th of July, 1855, on the Ninth avenue property, to have the latter property first applied to the payment of the Van Wagner judgment. A mortgagee is an alienee to the extent of his mortgage, quite as much as a grantee. (*Kellogg* v. *Rand*, 11 Paige, 59, 64.) Southard, therefore, by virtue of his mortgage, had an equity to insist that the Ninth avenue property, that aliened by Gilmore, should be first applied to the payment of the Van Wagner judgment. But this equity terminated when his mortgage was discharged, by the credit to him of the amount thereof in his purchase of the Eighth avenue property, subject to the Van Wagner judgment. That judgment was a lien on both parcels, and to be paid proportionally by each. The utmost that can be urged is that the release of Van Wagner discharged the Ninth avenue property from its proportionate part of the amount of that judgment, leaving the Eighth avenue property to respond to its proportionate part. It did not have the effect, as contended for by the counsel of the appellants, to discharge and satisfy the judgment wholly. A portion remained due in any aspect, and a sale by virtue thereof passed a good title to the purchaser. It was not a sale under a paid or satisfied judgment. Koon being a *bona fide* purchaser, therefore, acquired title to the premises, and as such owner was entitled to the surplus moneys arising upon the sale of the premises in this action. He holds the same under

a prior title to that of Southard, whose title was subordinated, to the one which he acquired.

There remains to be considered the fifth objection, namely: That Van Wagner, and those claiming under him, are estopped from enforcing this judgment against the Eighth avenue property, on the ground that at the time of the sale under the Platt mortgage, and the purchase of the premises by Southard, it was announced that there were no other liens upon the premises than the two mortgages to Myer and Quackenbush, and that he did not then assert the lien and validity of his judgment as he ought to have done. The facts, as found by the referee, bearing upon this point, are that the sale, at which Southard purchased the Eighth avenue property, was made in fact subject to the two mortgages to Myer and Quackenbush, and that no other liens were announced at the sale; that Van Wagner was present at the sale; that Southard had no actual notice of the Van Wagner judgment when he bid on the foreclosure sale, and paid his ten per cent. for the Eighth avenue property, but he knew of it some months before he took his deed or paid the balance of his bid. And the referee found, as a conclusion of law, that the omission of Van Wagner, at the sale on the foreclosure, to give notice of his judgment, did not estop him now; or those claiming under him, from setting up the same. It is to be observed here that the referee has not found, as claimed, that it was announced at the sale, that there were no other liens upon the premises than the two mortgages to Myer and Quackenbush.

If Van Wagner had, at the sale, announced that his judgment was not a lien, or remained silent when such an announcement had been made, I think he would have been estopped from afterwards claiming it to be a lien. But the referee does not find that anything was said at the sale about the lien of the judgment, and therefore Van Wagner was not called on to say anything in relation to it. But a complete answer to this objection is, that before Southard

completed his purchase he had full knowledge of all the facts. It appears that Southard, although he did not know of the existence of the Van Wagner judgment when he bid at the foreclosure sale and paid his ten per cent, yet he did know of it some months before he took his deed and paid the balance of his bid. He was not, therefore, a *bona fide* purchaser, without notice of the judgments. If he had not elected to take the property subject to the judgment, and he had purchased it under such circumstances as would entitle him to have the property relieved from the lien of the judgment, the court, on his application, would have released him from his bid, and directed a return to him of the ten per cent paid. He cannot now be permitted to set up that he did not know of the existence of this lien, after having elected to complete his purchase with full knowledge of it. Upon the facts found by the referee, there is no ground for applying the rule of estoppel as recognized and approved by this court in *Thompson* v. *Blanchard*. (4 N. Y. Rep. 303.)

Southard's executors are not personally charged with the costs of the proceeding by the order appealed from, and on this appeal we cannot review the adjustment of costs. We cannot look into the adjustment to ascertain that any items have been allowed not authorized by the code. The sum at which they were adjusted must necessarily include the expenses of the two references and hearings before the referee, and there is nothing to show in the appeal papers that the sum was arbitrarily fixed. The judgment directs that the costs be paid by the appellants, executors of Thomas Southard, deceased; and this is a direction to pay the same out of the assets of the deceased in their hands, and not that the executors should pay the same personally. (3 R. S. 5th ed. p. 555, § 317.)

The order appealed from should be affirmed.

Order affirmed.